UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BENNETT MAGDEN,

              Plaintiff,

  vs.

EASTERDAY FARMS, et al.,

              Defendants.

NO. 2:16-CV-00068-JLQ

ORDER RE: DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

     BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 33). Response and Reply briefs have been filed. (ECF No. 36 & 47). The court heard telephonic oral argument on the Motion on April 27, 2017. Ronald Van Wert appeared on behalf of Defendants. Patrick McGuigan and William Kim represented Plaintiff. This Order memorializes and supplements the court's oral rulings.

**I. Introduction**

  Plaintiff Bennett Magden alleges he was discriminated against on the basis of religion. Plaintiff alleges he was hired by Defendants in September 2010 to work as a tractor maintenance driver. (Am. Complt. ¶ 4.1). Defendant claims his supervisor, Eric Freeman, "attempted to proselytize" him at work, and gave him a Mormon bible. (*Id*. at 4.6 - 4.8). Plaintiff is not Mormon and was offended by Mr. Freeman's actions. (*Id*. at 4.11). On July 3, 2014, during a business meeting, Plaintiff told Cody Easterday about the proselytizing. (*Id*. at 4.13). Plaintiff alleges the following week he again told Mr. Freeman he did not want to discuss religious issues at work, Mr. Freeman became angry, and fired Plaintiff on July 8, 2014. Plaintiff brings his claims pursuant to Title VII, 42 U.S.C. § 2000 et seq, and the Washington Law Against Discrimination ("WLAD") §

ORDER - 1

49.60 et seq.

Defendants deny Plaintiff was discriminated against in any manner. Defendants admit Mr. Freeman gave Plaintiff a copy of the Mormon Bible, but deny Mr. Freeman engaged in proselytizing. Defendants claim Plaintiff was terminated for unsatisfactory job performance. Defendants seek summary judgment on several grounds. Defendants argue Easterday Farms Produce, Co. and Easterday Ranches, Inc. are improper parties and the court lacks subject matter jurisdiction over them. (ECF No. 33, p. 4-8). Defendants also argue Plaintiff cannot maintain a Title VII claim against the individual partners of Easterday Farms. Lastly, Defendants argue Plaintiff cannot establish a claim under Title VII or the WLAD because his job performance was not satisfactory at the time of termination.

## II. Factual Background

In summary judgment proceedings, the facts are viewed in a light most favorable to the non-movant, in this case the Plaintiff. The following facts are set forth in a light favorable to the Plaintiff and key factual disputes are noted.

Plaintiff Bennet Magden began working for Defendants on September 14, 2010. Plaintiff began work as a tractor maintenance/lube truck driver and was being paid $11 an hour. (ECF No. 34-1, Magden depo. p. 98). After about three months, he received a raise to $14/hour and after approximately one year he became a salaried employee at $40,000/year. (*Id*. at 98-99). In January 2014, Plaintiff was promoted to Assistant Manager and his salary was raised to $50,000/year. His supervisor during the course of his employment was Eric Freeman.

Cody Easterday is the president and CEO of Easterday Farms, an unincorporated partnership. (ECF No. 34-2, Easterday depo. p. 9). Easterday Farms employs about 80 people, and was Plaintiff's employer.[1] Mr. Easterday testified he considered Plaintiff to be a good worker, with a "great attitude" who was "punctual" and "energetic." (*Id*. at 20).

---

[1]The parties dispute whether other Easterday entities were "joint employers" of Plaintiff.

Plaintiff's immediate supervisor, Mr. Freeman, also testified Plaintiff "did a great job of lube truck." (ECF No. 34-3, Freeman depo. p. 21). He testified Plaintiff "never screwed up," the work was "done right" and Plaintiff was "fast" and "hustled" (*Id*.). He further agreed with Mr. Easterday's characterization of Plaintiff as punctual with a positive attitude. (*Id*.).

In late-August 2013, Mr. Freeman, who is Mormon, gave Plaintiff a copy of the Mormon Bible while they were at work. Plaintiff contends "about every two weeks" thereafter Mr. Freeman would ask if Plaintiff had read the verse Mr. Freeman had folded the page over on. (Magden depo. p. 50). Mr. Freeman admits he gave Plaintiff a copy of the Mormon Bible, but claims he discussed it on only two occasions. (ECF No. 34-3, Freeman depo. p. 97). Plaintiff claims Mr. Freeman would ask him questions such as: 1) what are you doing with the Bible?; 2) where is the Bible at?; 3) why aren't you reading the Bible or the verse I indicated? (Magden depo. at 51). Plaintiff testified he often tried to change the subject to avoid talking about religion. He testified he did not complain to anyone when he was first given the Bible at work because he was trying to advance his career and was not at that time an Assistant Manager. (*Id*. at 31).

Mr. Easterday and Mr. Freeman contend the quality of Plaintiff's work began to decline after he was promoted in January 2014. They argue the meeting of July 3, 2014 was set to discuss Plaintiff's performance issues. Plaintiff testified he was not aware of performance issues and thought the July 3, 2014 meeting was to discuss farm operations, such as "making plans for the early potatoes and then for harvest". (Magden depo. p. 34-35).

Plaintiff claims the July 3rd meeting began with Mr. Easterday threatening to terminate him if he did not listen to Mr. Freeman. (ECF No. 38, Magden Dec. ¶ 12). Plaintiff then claims Mr. Easterday raised some issues, including a weed spraying issue, and Plaintiff presented his side of the story and disputed he had ever hung up the phone on Mr. Freeman. (*Id*. at ¶ 13). Plaintiff states neither Mr. Easterday or Mr. Freeman brought up any issues with Plaintiff leaving work early or absenteeism.(*Id*. at ¶ 14).

Plaintiff claims Mr. Easterday said he should not have jumped to conclusions and asked if there were other issues they needed to discuss. Plaintiff then took the opportunity to complain about Mr. Freeman proselytizing at work, giving him a Mormon Bible, and urging him to read scripture. (*Id.*). Plaintiff claims Mr. Easterday essentially ignored his complaint and said he had nothing to do with that. Mr. Easterday testified he understood Magden to be complaining about the proselytizing, but he conducted no investigation, and concluded immediately there was no discrimination. (Easterday depo. p. 66-68). Plaintiff claims the meeting ended with Easterday and Freeman telling him he was doing a good job, and they told him to take a three-day weekend for the Fourth of July holiday. (Magden Dec. ¶ 14).

Plaintiff returned to work on July 7, 2014. On July 8, 2014, Mr. Freeman approached him and asked why he had complained to Mr. Easterday about the religious issue. (*Id.* at ¶ 15). Plaintiff claimed he told Freeman he only wanted to talk about work, and not personal matters. Freeman responded by saying Plaintiff was "defiant". Plaintiff claims he told Freeman he needed to leave early that day because his wife was about to give birth and was on bed rest. Plaintiff claims Freeman gave him permission to leave early. (*Id.* at ¶ 15). Mr. Freeman denies he gave Plaintiff permission or knew Plaintiff's wife was about to give birth. (Freeman depo. p. 93-94). Mr. Freeman called Plaintiff at about 6:30 p.m. on July 8th and left him a voicemail telling him he was terminated due to poor communication.

**III. Discussion**

**A. Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

**B. Improper Party Defendants**

The Amended Complaint (ECF No. 19) names three entities: 1) Easterday Farms; 2) Easterday Farms, Co., and Easterday Ranches, Inc. It also names four individuals: Gale Easterday, Karen Easterday, Cody Easterday, and Debbie Easterday. At oral argument counsel informed the court that Cody Easterday is married to Debbie Easterday, and that Gale is Cody's father, and Karen is Cody's mother. Defendants' Motion for Summary Judgment argues Easterday Farms Produce Co. and Easterday Ranches, Inc. are improperly named because they were not Plaintiff's "employer" under Title VII or the WLAD. Defendants contend the three Easterday entities are separate and distinct businesses. Defendants contend Easterday Farms employed Plaintiff and issued Plaintiff's

ORDER - 5

W-2 tax statements. (ECF No. 14-6). Plaintiff admits Easterday Farms issued his pay checks, but states he "understood" he worked for all three entities. (ECF No. 38, Magden Dec. ¶ 6).

Plaintiff contends the three entities and four individuals were his joint employers. Plaintiff relies upon *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003), for the proposition: "Two or more employers may be considered 'joint employers' if both employers control the terms and conditions of employment of the employee." The *Pacific Maritime* panel opinion was withdrawn when a motion for en banc rehearing was granted. See *Brown v. Arizona*, 2011 WL 2911054 (D. Arizona 2011)("Following the parties' stipulation to a dismissal ahead of rehearing, however, the Ninth Circuit never vacated its prior order or reinstated the opinion of the three-judge panel. Accordingly, this Court does not treat *Pacific Maritime* as binding precedent) citing the Ninth Circuit's Order at 367 F.3d 1167 (9th Cir. 2004). Regardless, this court can consider *Pacific Maritime* for whatever persuasive value it may have, and it has been cited in two subsequent unpublished Ninth Circuit opinions. In *Morsovillo v. Clark County*, 136 Fed.Appx. 17 (9th Cir. 2005), the Ninth Circuit relied on *Pacific Maritime* for the proposition that "the heart of the joint employer analysis is whether an entity can hire and fire an employee, can assign tasks to an employee, and supervises the employee's performance." In *Ford-Torres v. Cascade Valley Telecom*, 374 Fed.Appx. 698 (9th Cir. 2010), the Ninth Circuit cited *Pacific Maritime* for the proposition that two or more employers may be considered joint employers "if both employers control the terms and conditions of employment." Further, the court stated a "purported indirect employer" could only be liable under Title VII if it was "the entity performing the discriminatory act." *Id*. at 700.

The joint employer argument goes to whether a defendant is an "employer" under Title VII, however "the existence of a joint employment relationship does not establish liability." *U.S. EEOC v. Global Horizons*, 860 F.Supp.2d 1172, 1183 (D. Hawaii 2012). The joint employer status "merely establishes the employment relationship necessary for Title VII protections to apply ... whether these Defendants are liable for the alleged Title

VII violations will depend on what they knew, or should have known, and how they acted." *Id*. at 1184.

Plaintiff's argument is conclusory. He argues he performed work for all three entities and they had common ownership. (ECF No. 36, p. 19). He states the crop he worked was "ultimately packaged at Easterday Farms Produce Co." and some crops were sent directly to Easterday Ranches. (ECF No. 38, Magden Dec. ¶ 6). Plaintiff does not present evidence Easterday Ranches and Easterday Farms Produce Co. had the ability to control the terms and conditions of employment, including the ability to hire or fire him. Defendants state Easterday Farms. a partnership, was the employer. Easterday Farms issued the W-2s and Plaintiff's paychecks. Cody Easterday has averred, "Magden was an employee of Easterday Farms and was never employed by either Easterday Farms Produce, Co. or Easterday Ranches, Inc." (ECF No. 14, ¶ 11). Defendants maintain Easterday Farms Produce Co. and Easterday Ranches, Inc. are separate corporate entities. (See ECF No. 14 and attachments).

The court finds Plaintiff has not established the 'joint employer' theory and all claims against Defendants Easterday Farms Produce Co. and Easterday Ranches, Inc. will be dismissed. Additionally, as discussed *infra*, the Title VII claims against Easterday Farms Produce Co. and Easterday Ranches, Inc. will be dismissed as those entities were not named in the EEOC charge.

## C. Lack of Jurisdiction and Notice of EEOC Charge

Defendants contend the Equal Employment Opportunity Commission ("EEOC") charge only named Easterday Farms and thus the Title VII claims against the other Defendants must be dismissed for failure to exhaust administrative remedies. The EEOC charge and related documents are in the record at ECF No. 15-1. The charge named Easterday Farms and the Notice of Right to Sue was sent to HR Director, Easterday Farms. Defendants argue the court only has jurisdiction over the Title VII claims against Easterday Farms. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015). Defendants further argue all Defendants other than Easterday Farms lacked notice of the claim.

Plaintiff responds  all of the Defendants had, or should have had, notice of the EEOC charge.  Further, Plaintiff contends his EEOC charge should be construed with liberality because although he was represented by counsel, the charge was prepared without the assistance of counsel.  The general rule is "Title VII claimants may sue only those named in the EEOC charge because only they had the opportunity to respond to charges during the administrative proceeding." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990).  However, Title VII charges can be brought against persons not named in the EEOC charge "as long as they were involved in the acts giving rise to the EEOC claims." *Id*. at 1459.  Further, there is an exception "when an unnamed party was on notice of the filing and should have anticipated that the claimant would name the party in a Title VII suit." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015).

Whether the EEOC charge was prepared by counsel, or *pro se*, Plaintiff has averred he understood he worked for all three entities. (ECF No. 38, Magden Dec. ¶ 6).  Yet he chose to name only Easterday Farms in the EEOC charge.  Thus, his failure to include Easterday Farms Produce Co. and Easterday Ranches, Inc., cannot be excused through liberal construction of the EEOC charge.  None of the four individuals were named in the EEOC charge.  However, Cody Easterday is the President of Easterday Farms.  Cody was present at the July 3, 2014 meeting where Plaintiff complained of the proselytizing and Cody Easterday took part in the decision to fire Plaintiff.  He therefore could have anticipated he would be named in the Title VII suit.

In addition to the joint employer discussion *supra,* a separate and additional ground for dismissal of the Title VII claims against Easterday Ranches Inc. and Easterday Farms Produce Co. is the failure to name them in the EEOC charge.

**D.  Individual Liability**

Defendants argue a Title VII claim cannot be maintained against the four individuals named in the Amended Complaint. (ECF No. 68, p. 8).  Defendants rely upon *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)("individual defendants cannot be held liable for damages under Title VII"). Plaintiff does not directly rebut

ORDER - 8

Defendants' argument concerning the Title VII claims, but instead Plaintiff argues he can maintain WLAD claims against the individual Defendants. Defendants in Reply (ECF No. 47, p. 5) argue none of the four individuals is liable because a WLAD claim is only actionable against a supervisor or manager who discriminates. Defendants argue there are no allegations or evidence the individual partners of Easterday Farms discriminated.

As to the Title VII claims, Defendants are correct and Plaintiffs do not really contest the point. See also *Ortez v. Washington Co.*, 88 F.3d 804, 808 (9th Cir. 1996)("employees cannot be held liable in their individual capacities under Title VII"); *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995)(under Title VII, no personal liability for employees, including supervisors). Individual co-workers, supervisors, or managers are not individually liable under Title VII unless they meet the definition of "employer" under Title VII. See *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir. 1994)("we conclude that individuals who do not otherwise qualify as an employer cannot be held liable for breach of Title VII")*; Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995)("Because a supervisor does not, in his individual capacity, fall within Title VII's definition of employer, [Plaintiff] can state no set of facts which would enable her to recover"). Plaintiff does not allege the four named individual Defendants were his "employer". See Am. Complt, ¶ 2.8. The Title VII claims against the four individual Defendants will be dismissed.

As to the WLAD claim, the Washington Supreme Court has stated the WLAD "by its very terms, contemplates individual supervisor liability." *Brown v. Scott Paper*, 143 Wash.2d 349, 358 (2001). The Washington Supreme Court held "individual supervisors, along with their employers, may be held liable for their discriminatory acts. The plain meaning of RCW 49.60.040(3), by its very terms, encompasses individual supervisors and managers who discriminate in employment." *Id.* at 361. There are no specific factual allegations in the Amended Complaint regarding the actions of Gale Easterday, Karen Easterday, or Debbie Easterday. There is also no evidence presented in the summary judgment record that any of those three individuals had a role in deciding to terminate

Plaintiff. There is evidence of record that Cody Easterday heard Plaintiff's complaint of religious proselytizing, failed to investigate the complaint, and took part in the decision to terminate Plaintiff. The court will grant the Motion in part and dismiss the Title VII claims against all four individual Defendants and dismiss the WLAD claims against Gale Easterday, Karen Easterday, and Debbie Easterday. The court denies the Motion for Summary Judgment as to the WLAD claim against Cody Easterday.

### E. The Merits of the Title VII and WLAD Religious Discrimination Claim

The parties are in agreement this case should be analyzed as a 'reverse discrimination' claim under the framework set forth in *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033 (10th Cir. 1993). The framework is used because Plaintiff does not allege he was discriminated against because of his religious observation or religious practice, but rather due to his not being a member of his supervisor's Mormon faith. In *Shapolia*, the court stated:

> In order to establish a prima facie case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors, we hold the plaintiff must show (1) that he was subjected to some adverse employment action; (2) at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs. *Id*. at 1038.

The court further stated the "proof necessary to establish a prima facie case is not onerous." *Id*.

The Ninth Circuit Court of Appeals cited to the *Shapolia* opinion as "instructive" in *Noyes v. Kelly Services*, 488 F.3d 1163 (9th Cir. 2007), a case alleging reverse religious discrimination. If a plaintiff makes a prima facie showing, the burden of production then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Id*. at 1169. If an employer satisfies its burden to articulate a nondiscriminatory reason for the termination, the burden shifts back to the employee "to come forward with evidence that the proffered reasons were a pretext for discrimination." *Id*. The Ninth Circuit has emphasized "the shift back to the plaintiff does not place a new

ORDER - 10

burden of production on the plaintiff." *Id*. The jury may infer the ultimate fact of intentional discrimination from the evidence presented in the prima facie case "if the factfinder rejects the employer's proffered nondiscriminatory reasons as unbelievable." *Id*. at 1169-1170.

A plaintiff can prove pretext indirectly "by showing the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable," or directly by showing unlawful discrimination more likely motivated the employer. *Id*. at 1170. All evidence of pretext is to be considered cumulatively, and the Ninth Circuit has stated, "in the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is hardly an onerous one." *Id*.

As to the first element, it is undisputed Plaintiff was subjected to an adverse employment action -- he was fired on July 8, 2014. Defendants contest the second element, whether Plaintiff's job performance was satisfactory. It is undisputed that for over three years, from September 2010 to January 2014, both Eric Freeman and Cody Easterday considered Plaintiff to be a good employee. He was given several raises and promoted during the time period. Defendants contend after becoming Assistant Manager in January 2014, Plaintiff's performance began to decline.

Plaintiff disputes his performance declined, and disputes he was told he was performing poorly. Of key importance is the meeting on July 3, 2014, with Plaintiff, Mr. Freeman, and Mr. Easterday. Plaintiff states he believed the purpose of the meeting was to discuss farm planning, but instead the meeting began with Mr. Easterday threatening to fire him if he did not listen to Mr. Freeman. (ECF No. 38, Magden Dec. ¶ 12). Plaintiff claims neither Freeman or Easterday brought up any issues with Plaintiff leaving work early or absenteeism. (*Id*. at ¶ 14). Plaintiff states he had not taken a day off work since being promoted in January 2014. After discussing several issues, including weed spraying, and the alleged proselytizing, Plaintiff claims both Easterday and Freeman told him he was "doing a good job and that they appreciated my ability to manage people well and to farm well." (*Id*. at ¶ 14). Mr. Easterday admits that prior to July 3, 2014, he had not

ORDER - 11

generally brought up any problems with Plaintiff's job performance, except perhaps mentioning some "smaller items". (Easterday depo. p. 90). There is clearly a question of fact as to whether Plaintiff's job performance was satisfactory in July 2014.

The third element of the prima facie case is whether there is additional evidence from which the jury could infer the adverse action was taken based on discriminatory motive. Plaintiff offers evidence that Mr. Freeman gave him a Mormon Bible at work and brought up the Bible and verses from it about every two weeks for a 10-month period of time. Plaintiff complained to Mr. Easterday of the proselytizing on July 3, 2014. Plaintiff states Mr. Easterday ignored his complaint and said something to the effect of, 'this isn't my problem and I have nothing to do with that'. (*Id*. at ¶ 14).

Mr. Easterday admits that when Magden complained to him of Freeman's religious proselytizing he did not investigate. (Easterday depo. p. 66). Easterday immediately concluded Freeman did not discriminate, in part because "the meeting wasn't about a discrimination." (*Id*.). Mr. Easterday testified he adopted Freeman's recommendation to fire Plaintiff. He testified the decision was not made on July 3rd, but was made four or five days later in a phone call with Freeman. (*Id*. at 25 & 90).

Plaintiff has established a prima facie case. Defendants offer as the legitimate non-discriminatory reason for termination that Plaintiff's work was unsatisfactory. Mr. Freeman testified that after his promotion, Plaintiff's work performance declined. Freeman complained of communication difficulties: "I came around the shop, he'd be in the shop and he would leave. And he just kind of made himself scarce from me and avoided me as much as he could. Our communication wasn't really great after that." (ECF No. 34-3, Freeman depo. p. 24). Freeman and Easterday discussed one discrepancy they had with Plaintiff over a weed spraying project. Freeman testified that after April 2014, Plaintiff became "less available" on the worksite. (*Id*. at 26). At times Freeman's complaints of Magden's job performance are vague: "Things weren't happening on the farm the way the were supposed to happen, the weeds weren't getting sprayed, the ground wasn't getting worked correctly, GPS issues with tractors." (*Id*. at 84).

Mr. Easterday also described Plaintiff's alleged poor work performance in general terms: "his quality of work was deteriorating to the point where he couldn't do his job anymore." (ECF No. 34-2, Easterday depo. p. 20). Easterday stated Plaintiff was "incapable of managing." (*Id*.). Easterday said tasks were not getting done. (*Id*. at 22). He stated Plaintiff's "work ethic went from good to bad." (*Id*. at 23). Easterday also testified, "the report that I was getting from my farm manager, which is Eric Freeman, is that Bennett is not listening to what I'm asking him to do." (*Id*. at 25).

Defendants, through the testimony of Freeman and Easterday, have offered a non-discriminatory reason for the termination. However, there is ample evidence from which a jury could find these reasons were pretextual. Plaintiff received raises and promotions and was described as a good worker, with a great attitude, who was punctual and energetic. During his nearly four years of employment he went from making $11/hr to $50,000 a year. If Plaintiff's job performance was declining, Defendants did not utilize a system of progressive discipline. It appears Plaintiff was first advised of the problems on July 3, 2014, and then fired just two business days later on July 8, 2014. Mr. Easterday was informed of the conflict between Plaintiff and Mr. Freeman concerning what Plaintiff observed to be proselytizing at work, and conducted no investigation into the complaint. Mr. Freeman fired Plaintiff via a voicemail message at about 6:30 p.m. on July 8th, when Plaintiff claims Freeman had allowed him to go home early to check on his 9-month pregnant wife who was on bedrest.

The case boils down to whether Plaintiff was terminated due to religious reverse discrimination, or in retaliation for a complaint about proselytizing, or as Defendants contend he was fired because he was not performing well in his new managerial position. Plaintiff has presented evidence from which the jury could reject Defendants' proffered nondiscriminatory reason as unbelievable. The parties contest the real reason Plaintiff was terminated, and that question is for the jury. See *Noyes v. Kelly Services*, 488 F.3d 1163 (9th Cir. 2007)("the question of whether the real reason for the promotion decision was unlawful discrimination should have gone to the jury").

ORDER - 13

Defendants' Motion for Summary Judgment as to the Title VII and WLAD religious discrimination claims is **DENIED**.

### F. Retaliation

Paragraphs 5.2 and 5.5 of the Amended Complaint allege Defendants "discriminated and retaliated" against Plaintiff in violation of Title VII and WLAD. (ECF No. 19). Defendants devote only 1-page of their Motion to questioning whether the "passing remark" in the Amended Complaint states a claim and argue Plaintiff cannot establish a prima facie case of retaliation. (ECF No. 33, p. 18-19). The elements of a retaliation claim are: 1) Plaintiff engaged in protected activity; 2) Plaintiff was subject to an adverse employment action; and 3) there was a causal link between Plaintiff's protected activity and the adverse employment action." *Stegall v. Citadel Broad Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003).

Defendants argue poor job performance constitutes a legitimate non-retaliatory reason for taking an adverse employment action, and thus Plaintiff cannot state a claim. Plaintiff argues he has established a prima facie case of retaliation. Plaintiff argues an employee engages in WLAD-protected activity when he opposes employment practices forbidden by anti-discrimination law or the employee has a reasonably objective belief the employer has violated the law. *Ellis v. City of Seattle,* 142 Wash.2d 450, 460 (2000); see also *Peterson v. Hewlett-Packard*, 358 F.3d 599, 607 (9th Cir. 2004)("Nor does Title VII require an employer to accommodate an employee's desire to impose his religious beliefs upon his co-workers."). At the July 3, 2014 meeting, Plaintiff made a complaint of what he believed to be proselytizing by his supervisor. His employer did not investigate this allegation, and then just two business days later terminated Plaintiff's employment. Plaintiff argues the short time gap between the complaint (protected activity) and the adverse action (termination) raises an inference of discrimination. Timing of an adverse action "can provide strong evidence of retaliation." *Stegall v. Citadel Broad Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003)("Temporal proximity between the protective activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of

ORDER - 14

retaliation in some cases.").

As set forth *supra* in discussion of the discrimination claim, issues of fact exist concerning whether Plaintiff's job performance was satisfactory.  Viewed in a light most favorable to Plaintiff, the facts demonstrate Plaintiff engaged in protected activity on July 3, 2014, by making a complaint about religious proselytizing.  His employer took no steps to investigate the complaint.  Two business days later, on July 8, 2014, his supervisor, Mr. Freeman, asked Plaintiff why he had complained to Mr. Easterday.  Freeman and Plaintiff then had some disagreement, with Freeman calling Plaintiff "defiant".  Plaintiff then asked to go home early to care for his nine-month pregnant wife who was on bed rest, according to Plaintiff, Mr. Freeman allowed him to leave.  Mr. Freeman then called and left a voice-mail terminating Plaintiff.  Plaintiff has made a prima facie case of retaliation.  Defendants' Motion for Summary Judgment on the retaliation claim is **DENIED**.

### IV.  Conclusion

The claims against Easterday Farms of reverse religious discrimination and retaliation under Title VII and the WLAD remain.  The claims against Easterday Farms Produce Co. and Easterday Ranches, Inc. will be dismissed for the reasons set forth herein upon entry of final judgment.

Additionally, Plaintiff cannot maintain a Title VII claim against the four individually named Defendants, and the Motion for Summary Judgment is granted in that respect.  Plaintiff has not presented evidence to support a WLAD claim against three of the four individuals, but Plaintiff's WLAD claims against Cody Easterday remain.  Under Washington law, RCW 25.05.125, partners are generally liable jointly and severally for all obligations of a partnership.  The four named individual Defendants are partners in Easterday Farms, and they will remain in the case at this juncture in that capacity.

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment (ECF No. 33) is **GRANTED IN PART** and **DENIED IN PART** as stated herein.

2.  The Motion is granted as to Easterday Ranches, Inc., Easterday Farms Produce

ORDER - 15

Co., and as to the Title VII and WLAD claims against Defendants Gale Easterday, Karen Easterday, and Debbie Easterday in their individual capacity.  The claims against those Defendants will be dismissed upon entry of final judgment.

3.  The Motion is denied as to the Title VII and WLAD discrimination and retaliation claims against Easterday Farms and the WLAD claims against Cody Easterday.

4.  The matter remains set for final Pretrial Conference on **May 19, 2017**, at 9:30 a.m. and for jury trial on **June 5, 2017**, at 9:00 a.m.

5.  Counsel are reminded of the provisions regarding Local Rule 16.1(b).  The parties are required to confer in good faith in an attempt to formulate a pretrial order.  If the parties cannot agree on a pretrial order, each shall prepare a proposed pretrial order, to be served and filed no later than **May 12, 2017.**

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 3rd day of May, 2017.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 16